## VOIGHTLANDER v. STATE ex rel. BARNETT, Bank Com'r.

No. 25878. Nov. 5, 1935.

Rehearing Denied Dec. 3, 1935.

W. O. Cromwell, for plaintiff in error.

H. R. Christopher, for defendant in error.

PER CURIAM. This suit was instituted on June 10, 1933, in the name of the State of Oklahoma, by W. J. Barnett, as Bank Commissioner, to recover the additional liabi'ity of Walter Voightlander as the owner of five shares of the capital stock of the Bank of Hillsdale at the time the said bank was taken into the possession of the Bank Commissioner on account of insolvency on October 12, 1932.

The parties will be referred to herein as they appeared in the lower court.

The petition contained the usual allegations of such an action, and there being no contention in the appeal touching the allegations of the petition, no further statement is necessary. The answer was a general denial except defendant admitted purchasing the five shares of stock standing in his name, and set up a further defense that defendant was induced to purchase such

stock by the fraudulent representations of the officers of the insolvent bank that at the time he purchased the stock the bank was in a solvent condition and the stock worth par. It was alleged that such representations were false and known to be false by said bank officers, and that defendant relied on such false representations which he believed to be true, and otherwise would not have purchased the stock. As a further defense it was asserted that the Bank Commissioner knew said bank to be insolvent prior to the 31st day of July, 1931, the date upon which the stock was purchased, and knew the officers thereof were selling their stock, notwithstanding which the Bank Commissioner took no action, and was, for that reason, estopped to prosecute this action. To this answer plaintiff replied by general denial.

On September 23, 1933, a stipulation was filed in the cause, signed by attorneys for both parties, by which it was agreed that the cause be stricken from the trial calendar and be set for trial before the court, and jury trial was waived. Subsequently, the attorney who signed the stipulation on behalf of defendant retired from the case. On October 17, 1933, defendant filed a motion, verified by his oath, alleging that the stipulation waiving jury trial was signed by his attorney on his behalf without his knowledge, consent or approval, and demanding that the case be redocketed as a jury case. This motion appears to have been denied, although no order of the court in that behalf appears in the record. However, counsel for the defendant makes objection to the introduction of evidence, one of the grounds thereof being the denial of such motion by the court. No exception to such action of the court appears, and the trial of the case was started October 18, 1933, before the court, without a jury. At the conclusion of the trial the court made findings of fact in substance as follows:

(1) The defendant purchased, on July 31 1931, five shares of the stock of the Bank of Hillsdale, at which time the bank was represented by officers thereof to be solvent and the stock was represented as a good investment; (2) that the defendant, with other citizens of the community, purchased stock with the purpose to strengthen the bank and later aided in the sale of stock to other parties and talked to various other purchasers about the bank and its condition, and knew or should have known the condition thereof: (3) that the bank was not insolvent at the time defendant bought the stock and no actual misrepresentations were made to defendant; (4) that defendant, while a farmer, was not ignorant or unable to comprehend the details of the transaction, and was fully capable of realizing the liabilities he assumed in purchasing the stock.

Upon these findings of fact the court concluded: (1) That defendant was liable for the amount of capital stock held by him; (2) that fraud is not a proper defense against creditors of the bank in an action to enforce stockholders' liability; (3) that since defendant failed to take any steps to rescind his purchase after he became aware of all the facts, he is estopped to complain after the rights of creditors and third parties intervened; (4) that if fraud were practiced on defendant by others whether or not they were officers of the bank, he must look to the individual guilty thereof, and is estopped to deny liability under the statute as to double liability of stockholders; (5) that the sale of stock to defendant by members of the Burns family was a valid sale and was unaffected by the taking of his note therefor or the fact that the note was later placed in the bank. Upon the findings and conclusions a judgment was entered against defendant for $500, with interest from October 12, 1932.

It was not questioned that the defendant was the owner of five shares (par value $100) of stock of the Hillsdale Bank at the time it was closed by order of the Bank Commissioner on October 12, 1932. It is clear that such stock was purchased by the defendant from F. D. Burns, the president of the bank, about July 31, 1931, and that the certificate issued to defendant represented stock transferred from certificates formerly held by Burns or a member of his family, and that the stock was not sold by or for the Bank of Hillsdale. The bank was examined by the State Banking Department in March, 1931, and again in August, 1931, and the reports of the examiner are in evidence. In neither of these reports is the bank specifically found to be insolvent, nor does it appear that the bank was subsequently closed by the Bank Commissioner as a result of disclosures of these examinations. The president of the bank, F. D. Burns, testified the bank was in no serious trouble in 1931, and that the sale of the stock was made in order to obtain a wider community interest in the bank in view of the difficult times and nearby bank failures.

A. F. Butts, cashier of the First National Bank of Enid, a witness for defendant, testified that he examined the reports of the

examiner for the March and August, 1931, examinations, and gave as his opinion from such inspection that the bank was insolvent on July 31, 1931.

Another witness for defendant, A. E. Stephenson, president of the Central National Bank of Enid, testified that he had examined the examiner's reports for March and August, 1931, examinations, that he was unable to say from such examination what the condition of the bank was as to solvency on July 31, 1931, but from his examination of the March report it was his opinion the bank was then insolvent; that the August report showed improvement. He offered no opinion as to the solvency or insolvency at the time of the August examination.

Neither Butts nor Stephenson examined the assets of the bank or inspected the note case, at any time prior to the closing of the bank, and the opinions were based entirely upon their interpretations of the various reports.

The defendant testified that he bought the stock upon the representation of Burns that the bank was solvent and that it was a good investment; that he believed such representations, and but for them would not have purchased the stock; that he helped to sell stock to other parties. The defendant further testified that from 10 to 20 days (at another point in his testimony from two to three months) after he had bought the stock, he learned that the condition of the bank had been misrepresented to him and that it was in a precarious condition. The defendant took no action to rescind the purchase, and there is no evidence that the matter of the sale of the stock was ever thereafter discussed by him with Burns, or any other officer of the bank.

The first point made by the defendant is that the court should have permitted him a jury trial. The Oklahoma Statutes 1931 provide:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided." Sec. 350.

"The trial by jury may be waived by the parties. in actions arising on contract, and with the assent of the court in other actions, in the following manner: By the consent of the party appearing. when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney, filed with the clerk. By oral consent, in open court, entered on the journal." Sec. 373.

The stipulation filed on September 22, 1933, and signed by the attorneys for both plaintiff and defendant (formal parts omitted) was as follows:

"It is hereby stipulated by and between the above-named plaintiff and defendants, through their respective attorneys, that the above-entitled cause of action may be stricken from the present trial docket assignment.

"And, it is further agreed between the said parties that said cause may be tried by the court at such future time as may be set for trial by said court and that all the parties hereto, both plaintiff and defendants, do hereby waive trial by jury and consent that said matter shall be heard by the judge of said court."

It is contended by defendant that upon his showing by affidavit that the stipulation was made by his counsel without his knowledge, consent or approval, and upon his demand for a jury trial, he was legally entitled to a jury trial, and its denial was error. This involves the question as to whether or not an agreement by counsel, in form and manner as provided by the statute, by which both parties agree to the waiving of a jury trial, can be rescinded by one of the parties upon a showing that his attorney, or former attorney (as in the case here) entered into such stipulation without his knowledge, consent or approval. Okmulgee Producing & Refining Co. v. Wolf, 88 Okla. 188, 212 P. 415, is chiefly relied upon by defendant to sustain the point. That case, however, is authority only for the proposition that a party will not be deemed to have waived a jury unless the waiver is in form and manner provided by section 373, Okla. Stats. 1931. In that case no written waiver signed by attorneys had been filed, and no oral consent in open court had been entered in the journal, and the court held the jury trial had not been waived. In the case now before us, a written waiver, signed by counsel for both parties, was filed in strict accordance with section 373, above quoted.

Under the facts of this case the decision of the court in Pryer v. Furnish, 130 Okla. 40, 265 P. 110, appears conclusive upon the right of a party, having filed a written stipulation waiving jury, to thereafter withdraw such consent. In that case the stipulation was signed by attorneys for both parties and was as follows:

"It is hereby stipulated between the par-

ties that case may be reset for hearing at as early a date as the court will set, jury being waived, after October 20, 1925, upon which no further continuances will be asked for except upon grounds sufficient in law to support a demand for such continuance."

This was filed October 13, 1925, and on April 12, 1926, defendant filed a demand for jury trial. The court said:

"This right of trial by jury was waived by the defendants by written consent, by attorney representing the defendants, filed with the clerk, and defendants were not in a position to later attempt to withdraw said waiver. The right of trial by jury was a right which belonged to the plaintiffs as well as to the defendants and could not be waived by either without the consent of the other, and the court did not commit error in overruling defendants' application for a jury trial."

The Pryer Case was, strictly speaking, an action on contract, and no point was made that the waiver had been made by the attorney without the knowledge or consent of his client. Otherwise, the facts of the case are entirely parallel to those in the case now under consideration, and that decision, but for the exceptions noted, is decisive of this case. The statute, in express terms, provides that the stipulation may be signed by either a party or his attorney, and it is our view that such a stipulation entered into by counsel waiving trial by jury, being a matter of procedure, may in good faith be made by an attorney without the knowledge or consent of his client, and when so made neither party thereto may withdraw except by leave of court for cause shown, such as fraud, collusion, accident, surprise, or some ground of similar nature. Muller v. Downs, 24 U. S. 277, 24 L. Ed. 76; Ex parte Hays, 92 Ala. 120, 9 So. 156; Wadsworth v. First National Bank, 124 Ala. 440, 27 So. 460; Porter v. Holt, 73 Tex. 447, 11 S. W. 494; Brown v. Cohn, 88 Wis. 627, 60 N. W. 826; Pike v. Emerson, 5 N. H. 393, 22 Am. Dec. 468; Stevenson v. Felton, 99 N. C. 58, 5 S. E. 399; Brown v. Pechman, 5 S. C. 555, 33 S. E. 732; Ish v. Crane, 13 Ohio St. Rep. 574.

In Ex parte Hays, supra, the Supreme Court of Alabama, in discussing the binding effect of stipulations as to matters of procedure, say:

"It seems that the agreement of the attorneys in a cause, made in pursuance of the terms of this statute, is as binding upon the parties as would be a contract entered into by themselves. Norman v. Burns, 67 Ala. 248; Charles v. Miller, 36 Ala. 141. If agreements so made have such effect, then they may not be set aside upon any lower grounds

than would warrant a rescission of a contract,—namely, fraud, collusion, accident, surprise, or some ground of the same nature."

In the case of Brown v. Cohn (Wis.) supra, where the court had under consideration a case in which the trial court had permitted one of the parties, upon application, to withdraw his waiver, the court emphasized the correct rule in the following language:

"Stipulations entered into in relation to the management and conduct of an action by an attorney are binding upon his client, and cannot be set aside or disregarded at his mere caprice or option. The court, however, may, upon proper cause shown, relieve a party from the effect of a stipulation, or set it aside; and what is proper cause is matter of discretion with the court, the exercise of which will not be interfered with on appeal, unless this discretion has been abused. It is plain that the stipulation waiving a trial of the action by a jury was made when it was supposed that the trial involved no difficult or disputed questions of fact, and that the case would turn substantially or wholly upon questions of law. Subsequently, it was ascertained that questions of fraud and forgery were involved and are to be tried, and in respect to which charges of perjury were suggested at the argument. While we would not have been inclined to reverse the order had the plaintiff's motion been denied, yet, in view of the facts and circumstances disclosed, we hold that the granting of the motion was within a fair exercise of judicial discretion."

In the case of Stevenson v. Felton, supra, the Supreme Court of North Carolina say:

"Parties litigant have the constitutional right (article 4, §13, Const.) to waive trial of issues of fact by a jury; and when, by consent, they have waived a trial by jury, and selected another mode of trial (and a reference by consent is such a waiver) neither party can afterwards demand a jury trial as matter of right, nor has the judge the power, at his discretion and against the will of either party, to set aside or strike out or discontinue an order of reference entered by the written consent of the parties."

In Pike v. Emerson (N. H.) supra, the court say:

"So an agreement by an attorney to refer a cause is binding upon his client (citing cases). The court has the power, without doubt, in case of fraud or mistake, to relieve the party from the effect of such an agreement. But while an agreement, like that made by these parties in the court below, remains unimpeached, we are of the opinion that no appeal can be prosecuted here."

See, also, 6 C. J. 647, et seq.

No case has been cited by counsel, nor

have we found an authority supporting the contention that the mere dissatisfaction of a client with the stipulations lawfully entered into by his counsel in matters of procedure, may be repudiated for that reason alone and without the consent of court. The assent of the court to a waiver of jury in cases not upon contract is not by the statute required to be evidenced by an entry on the records of the court, and such assent is sufficiently evidenced by the court proceeding to hear the cause upon and pursuant to stipulation of the parties waiving the jury. We, therefore, hold that the court did not err in denying jury trial.

The second contention made by the defendant is that the finding of the court that the Bank of Hillsdale was solvent at the time the stock was bought, July 31, 1931, was not sustained by any evidence. In approaching this question, recognition must be given to the repeated decisions of this court, the gist of which is aptly summarized in the second paragraph of the syllabus in the case of Baker v. Jack, 112 Okla. 142, 241 P. 478, as follows:

"In a law action, where the parties are entitled to a trial by jury, and a jury is specifically waived, and the cause tried to the court, the evidence is sufficient to sustain a judgment if there is any evidence whatever reasonably tending to prove, either directly and immediately or by permissible inference, the essential facts, and the Supreme Court will not substitute its judgment for that of the trial court."

To like effect are Drum v. Crews, 117 Okla. 92, 244 P. 744; Johnson v. Richards, 99 Okla. 254, 226 P. 559; Moses v. Harris, 111 Okla. 54, 237 P. 591; Wetzel v. Rixse, 93 Okla. 216, 220 P. 607.

The court had before it voluminous reports of the examiner upon the condition of the bank for March, 1931, and again for August, 1931. It was the duty of the Bank Commissioner, if said bank had been disclosed by such examinations to be insolvent, to have closed the bank if such condition had not been immediately rectified. F. D. Burns, president of the bank, testified that at the time the stock was sold, the bank was in no serious trouble. The only testimony that the bank was insolvent on July 31, 1931, was an opinion expressed by the witness, Butts, called by the defendant. This opinion was predicated solely upon an examination of the examiner's reports of March and August, which were in evidence. The witness, Stephenson, offered by the defendant, testified that he could form no opinion of the condition of the bank on July 31, 1931, from such reports. He expressed the opinion that the examiner's report for March disclosed the bank to be insolvent. He was not asked to express an opinion as to the condition of solvency or insolvency on the August report, but testified that it showed some improvement. Neither of these witnesses had examined the physical property of the bank, or its notes, at or near the time in question. The trial court, having before it the evidence of the reports of the examiner, was not required to accept the opinion of the witness, Butts, as to the condition of said bank as shown by such reports, particularly in view of the testimony of the witness, Stephenson, apparently a banker of long experience, that it was impossible to determine the solvency or insolvency of the bank on July 31, 1931, from such reports.

The evidence of Butts and Stephenson as to such insolvency was opinion evidence not of a convincing character, and rested solely upon documentary evidence in the record, from an examination of which the court might, and obviously did, draw a different conclusion. It, no doubt, was easy, after the occurrence of the closing of the bank, to have and express an opinion as to the existence of certain conditions at a time in the past, viewing as actualities, as such an opinion would, events which, in July, 1931, were in futuro. It is a fact known by all whose minds have not been closed to the march of events, that there was, between the summer of 1931 and the fall of 1932, a shrinkage in value of bank assets unparelleled in generations, and promissory notes and mortgages that, in July, 1931, were considered good, in 1932, with the rigors of the depression increasing and the shrinkage of values becoming manifest, were found worthless. Since, under the principles hereinbefore mentioned, we are not required to weigh the evidence on the question of solvency or insolvency, we do not do so. We have no hesitancy, however, in holding that there was evidence before the court "reasonably tending to prove, either directly and immediately or by permissible inference" that the Hillsdale Bank was solvent on July 31, 1931.

It would serve no useful purpose to further lengthen this opinion by a discussion of the further questions raised which pertain to the conclusions of law reached by the trial court as hereinabove set out, and we, therefore, herein express no opinion with reference thereto. The fraud relied upon was the alleged misrepresentations of the bank

officials to the effect that at the time of the sale of the stock the bank was solvent, when the same was insolvent. The facts in this regard were found adverse to the defendant's contention, which finding of fact we have approved, rendering it unnecessary to deal further with the issues.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys W. F. Tucker, M. C. Spradling, and Carter Smith in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Tucker, and approved by Mr. Spradling and Mr. Smith, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.